### PATTERSON STEEL CO. et al. v. BAILEY et al.

No. 21466. Opinion Filed April 14, 1931.

West, Gibson, Sherman, Davidson & Hull, for petitioners.

J. Berry King, Atty. Gen., and Robert W. Gibbs, for respondents.

KORNEGAY, J. This is an action brought in this court to review an award of the Industrial Commission. The award was made June 2, 1930. The injury occurred on September 20, 1928. Claimant, at the time he received it, was in the employ of the Patterson Steel Company, whose insurance carrier was the United States Fidelity & Guaranty Company. Notice was promptly given by the employer to the Industrial Commission of the accident, and it was received and filed September 27, 1928. It stated that the claimant had been in the employ of the steel company since August 5, 1922. Its statement as to how the accident occurred was, "strained back while handling steel," and as to the extent of the injury, "undetermined." It stated that medical atendance was provided, and that Dr. A. Roy Wiley, Medical Arts Building, Tulsa, Okla., was the physician. It further stated the injured employee had fully recovered, and had returned to work, and was earning full wages. It was dated September 24, 1928.

On January 22, 1929, the claimant filed a claim for compensation. The cause of the accident was given as "handling cold, roll steel, foot slipped on board, fell and injured back. Displacement of fourth lumbar vertebra." As to quitting work, the answer was, "worked a few days, then was laid off by employer on account of injury." It further stated that claimant was likely to be laid off more than seven days, and the injury to the vertebra was permanent; that the employer furnished medical attention and the doctor was Dudley W. Dickson, 305 Palace Building, Tulsa, Okla.

Pursuant to notice, a hearing was had April 16, 1929, at Tulsa, conducted by Commissioner L. B. Kyle, "to determine liability and extent of disability."

An order was made on May 24, 1929, which is as follows:

"Now, on this 24th day of May, 1929, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to hearing held at Tulsa, Okla., April 16, 1929, at which hearing claimant appeared in person and by his attorney, Fred A. Grayhill, respondent, and insurance carrier being represented by W. G. Hawkinson, and the Commission having reviewed the testimony taken at said hearing, all records on file and being otherwise well and sufficiently advised in the premises, finds:

"(1) That claimant is alleging a disability resulting from an injury sustained on September 20, 1928; and it also appears from the testimony that claimant sustained other injuries of a similar nature prior to September 20, 1928, and while previous injury does not preclude the claimant from compensation for a subsequent injury,

"The Commission is of the opinion: That the testimony is insufficient to show that any disability resulted from the injury sustained on September 20th.

"It is therefore ordered: That the claim of C. E. Bailey for compensation for an injury sustained September 20, 1928, be and the same is hereby denied, and this cause dismissed.

"Opinion and order by Commr. L. B. Kyle.

"G. T. Bryan, Chairman, concurring.

"F. L. Roblin, Commr., concurring."

None of the evidence on which this order was made is set out. The next matter appearing is a motion by claimant filed January 5, 1930, to reopen this case under section 7296, and to allow further evidence to be taken. The time and place and cause of the accident and circumstances of it were set out, together with the report of a radiographer as to claimant's physical condition, Dr. Charles J. Wood. It further set out the inability of the claimant to secure the attendance of an eyewitness to the accident at the first hearing, and also his inability to get the benefit of the testimony of Dr. Cronk, alleging that his testimony was omitted over the protest of the claimant. It further detailed the reason why the eyewitness did not appear, i. e., he "didn't want to get in bad with the Patterson Steel Company." It set out that another eyewitness had been found. There was an allegation of change in physical condition since April 16, 1929, for the worse. His condition was described as being permanently injured and being a cripple, and unable to work. He asked for an opportunity to introduce further testimony. The application was verified.

The employer and its carrier, the United States Fidelity & Guaranty Company, on February 26, 1930, filed a demurrer on three

grounds, the first being lack of authority in the Commission to grant the relief prayed for, the second because "the issues between the parties are res adjudicata," the third because the facts set out were not sufficient to constitute a cause of action.

A notice was served showing that a hearing would be conducted April 4, 1930, at Tulsa, before T. H. Doyle, Chairman of the Commission. In the notice is a reference to the motion as follows:

"Motion of claimant to reopen cause and award further conpensation."

The evidence was heard. Witnesses, both professional and ordinary, were heard. A former workman for the steel company, without objection, was permitted to testify that he saw the accident, and to describe the details. The claimant was recalled, and permitted to testify without objections, and the claimant rested.

The testimony showed that the claimant, while engaged in carrying a piece of roll steel weighing 300 pounds, and on a gangway 10 inches wide and 26 inches from the ground, missed his footing and that he fell with this weight on him, he carrying it on his shoulder. The piece of steel was 18 feet long and was being handled by two men at the time of the accident.

Medical attention was furnished him by the employer, and after a few days had elapsed, he went back to work, but not in the same employment as before the injury. He was never able to do the same kind of work after the injury as he did before. He was taken back into the employ of the company and put at other work, largely giving directions to other workmen as to what to do. He remained in the employ of the company for a few days, and was dismissed by Mr. Patterson, who ran the company, in order that he might get his back cured.

At the time of the hearing and the taking of his testimony, he was engaged in distributing newspapers; however, he could hardly carry them. Up to the time of the injury in 1928, he had carried 15 inch I-beams. He claimed that his condition was worse than it was on April 16, 1929, and that he was more pained and had no strength to carry a small bundle of papers. He was not cross-examined by the attorney for the carrier.

It developed that he had been hurt before, but those hurts were of minor importance so far as breaking him down in the back was concerned. He could carry the I-beams up to the time of the last injury. When he was recalled he stated about how his earning capacity had dwindled, and it developed that he drove the automobile and the boys delivered the papers.

There was ample evidence to support the award made by the Commission. It is hard to see why on April 16, 1929, the Commission held that an injury was sustained on September 20, 1928, a matter that was practically conceded, and that no disability resulted therefrom, as the Commission held at that time.

The applicable statutes, as a search of the various acts amendatory of the original reveals, read as follows:

"Section 10 of article 2 of the Act of 1915, ch. 246, commonly called 'The Workmen's Compensation Law,' entitled Workmen's Compensation Law—General Provisions.

"An act providing for the compulsory compensation of injured employees in hazardous industries, placing the supervision of the act under a Commission herein created; fixing a schedule of awards, and providing penalties for the violation of this act."

As amended by the Act of 1919, Session Laws, ch. 14, page 21, C. O. S. 1921, section 7294, and by the Act of 1923, Session Laws, page 125, ch. 61, is as follows:

"Claim for Compensation.

"Section 7. Section 7294, C. O. S. 1921, is hereby amended to read as follows:

"Section 7294. Any time after the expiration of the first five days of disability on the part of the injured employee, a claim for compensation may be presented to the Commission. If the employer and the injured employee shall reach an agreement as to the facts with relation to an injury, for which compensation is claimed under this act, a memorandum of such agreement, in form as prescribed by the Commission, and signed by both the employer and employee, may be immediately filed by the employer with the Commission, and if approved by the Commission, shall, in the absence of fraud, be deemed binding upon the parties thereto; such agreement shall be approved by the Commission only when the terms conform to the provisions of this act. The Commission shall have full power and authority to determine all questions in relation to payment of claims for compensation under the provision of this act. The Commission shall make, or cause to be made, such investigation as it deems necessary, and upon application of either party shall order a hearing, and as soon as practicable. after a claim for compensation is submitted under this section, or such hearing closed, shall make or deny an award determining such claim for compensation, and file the same in the office of the Commission, together with the

statement of its conclusion of fact and rulings of law. The Commission may, before making an award, require the claimant to appear before an arbitration committee appointed by it and consisting of. one representative of employees, one representative of employers, and either a member of the Commission, or a person especially deputized by the Commission to act as chairman, before which the evidence in regard to the claim shall be adduced, and by which it shall be considered and reported upon. Immediately after such filing, the Commission shall send to the parties a copy of the decision. Upon a hearing pursuant to this section either party may present evidence and be represented by counsel. The decision of the Commission shall be final as to all questions of fact, and except as provided in section 7297 of this article, as to all questions of law."

Section 12 of article 2 of the 1915 Act, section 7296, C. O. S. 1921, has not been changed and is as follows:

"Review of Awards.

"Section 12. Upon its own motion, or upon the application of any party in interest, on the ground of a change in conditions, the Commission may at any time review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this act, and shall state its conclusions of fact and rulings of law, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any money already paid."

Section 13 of article 2 of the original act, C. O. S. 1921, section 7297, as modified by the act of 1923 (Laws 1923, c. 61, sec. 8) and the Act of 1929, Session Laws, ch. 30, page 30, is as follows:

"State Industrial Commission—Appeals to Supreme Court.

"An Act amending section 7297, C. O. S. 1921, relating to appeals to the Supreme Court from orders of the State Industrial Commission, providing for appeal bond, and declaring an emergency.

"Be it Enacted by the People of the State of Oklahoma:

"Sec. 1. That section 7297, C. O. S. 1921, be and the same is hereby amended to read as follows:

"7297. Appeal to the Supreme Court—Requirements.

"The award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within 30 days after a copy of such award or decision has been sent by said Commission to the parties affected, an action is commenced in the Supreme Court of the state to review such award or decis-ion. Said Supreme Court shall have original jurisdiction of such action, and is authorized to prescribe rules for the commencement and trial of the same. Such action shall be commenced by filing with the Clerk of the Supreme Court a certified copy of the award or decision of the Commission attached to the petition by the complainant wherein complainant or petitioner shall make his assignments or specifications as to wherein said award or decision is erroneous or illegal. Provided, however, no proceeding to reverse, vacate, or modify any award or decision of the Commission, wherein compensation has been awarded an injured employee, shall be entertained by the Supreme Court unless the secretary of the Commission shall take a written undertaking to the claimant, executed on the part of the respondent or insurance carrier, or both, with one or more sureties to be approved by the secretary, to the effect that the appellant will pay the amount of the award rendered therein, or on the further order of the Commission after the appeal shall have been decided by the Supreme Court. Before the Clerk of the Supreme Court shall accept the action for filing, a certificate from the secretary of the Commission shall be required, showing this provision has been complied with. Said proceeding shall be heard in a summary manner and have precedence over all other civil cases in such court, except preferred Corporation Commission appeals. The Commission shall be deemed a party to such proceeding and the Attorney General, without extra compensation, shall represent the Commission therein. Such action shall be subject to the law and practice applicable to other civil actions cognizable in said court. Upon the final determination of said action, in which the award or decision of the Commission is sought to be reviewed, the Commission shall make an order or decision in accordance with the judgment (sic) or decision of said court. The Commission shall not be liable for any costs apart from said proceeding, but otherwise the cost shall be taxed as in other cases."

Section 14 of article 4 of the original act, C. O. S. 1921, sec. 7325, as amended by the Act of 1923, ch. 61, Session Laws, page 118, is as follows:

"Sec. 7325. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto if, in its opinion, it may be justified, including the right to require physical examination as provided for in section 7293, and subject to the same penalties for refusal; provided, that upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition.

The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency, or probable permanency, of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require. The Commission shall have auhority to consider such petition, and to dismiss the same without a hearing if, in its judgment, the same should not be set for hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly, and the Commission may make an award that shall be final as to the rights of all parties to said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury, or any results arising from same. If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed. The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission; provided, there shall be no appeal allowed from an order of the Commission dismissing such petition as provided in this section."

"Award" is not defined in the act; as defined by Webster's Revised Unabridged Dictionary, it is:

"1. A judgment, sentence, or final decision. Specifically: The decision of arbitrators in a case submitted.

"2. The paper containing the decision of arbitrators; that which is awarded."

"Award" is defined in Black's Law Dictionary (2nd Ed.) as follows:

"The decision or determination rendered by arbitrators or commissioners, or other private or extra judicial deciders, upon a controversy submitted to them; also, the writing or document embodying such decision. Halnon v. Halnon, 55 Vt. 321; Henderson v. Benton, 52 Tex. 43; Peters v. Peirce, 8 Mass. 398; Benjamin v. U. S., 29 Ct. Cl. 417."

Under these statutes it is clear that on a change of condition the Commission has full power to make the examination and to award the compensation. It is true that, as stated in one of the provisions concerning the award, any award made by the Commission binds the parties. This, of course, means the claimant, the employer, and the insurance carrier.

It is further clear that the term "award" is used by the Legislature as meaning a decision or finding of the Commission, and that the question as to whether or not the claimant was successful in getting the award in his favor, or the insurance carrier or the employer getting the award in their favor, is by no means decisive. It is further apparent that it is immaterial as to which one is the favored one in the award, whether it be the carrier or the employer, and that in any event it is open for further consideration by the Commission, which is practically nothing more than an administrative board.

It is further clear that jurisdiction, for the first time, was conferred upon the Commission by the Act of 1923 to consider the question of a final settlement and the ousting of its own jurisdiction. The theory undoubtedly of the Laborer's Compensation Law is to give the benefit of any change in condition to the one entitled to it, whether it be the laborer or the employer or the carrier. No human agency can determine in advance what the effect of an injury may result in. At best the settling of compensation, that is now allowed instead of the old damages allowed, must be an approximation with a view of eliminating some of the ills arising from the old court system. Very wisely the Legislature enacted the provision about awards. However, in the latter part of the original act, for fear that something might arise leading to an enforcement of some of the old doctrines that were undesirable, the Legislature provided that the jurisdiction of the Commission should be continuing with reference to each case, until a settlement was had upon a full hearing where both the employer and the claimant were represented, and the evidence taken and the amount fixed, followed by payment. In other words, the act insures compensation to the injured workman.

When the Commission first had the matter before it, the consequence of the injury had not developed. When it had developed to such an extent that the claimant was practically a wreck, as a result of an injury that everybody concedes had happened, the Commission reviewed its former award, and made an award in accordance with the conditions then existing. It follows, therefore, that the Commission was within its rights in reopening the matter, and in having further investigation, in taking more proof, and in awarding damages for a disability that unquestionably was a result of the injury.

sustained while in the employ of the steel company.

The cause is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and McNEILL, JJ., concur.

SWINDALL, and HEFNER, JJ., concur in conclusion.

RILEY, CULLISON, and ANDREWS, JJ., dissent.

---

SWINDALL, J. (concurring in conclusion). I concur in the conclusion. I cannot agree that the Workman's Compensation Law should be construed as the opinion delivered by Mr. Justice Kornegay intimates this court should construe it. Such an interpretation would conflict with many prior decisions of this court, some of which I shall hereafter discuss. Under such a holding none of the findings or judgments of the Commission would ever become final and conclusive.

In the main the opinion is too much like a Mother Hubbard dress.

This is an original proceeding to review an award of the State Industrial Commission dated June 2, 1930, in favor of respondent, C. E. Bailey, and comes clearly within the rule announced by prior decisions of this court, and in my opinion we should so hold, instead of passing the other decisions by unnoticed. On September 20, 1928, the respondent, Clarence E. Bailey, was an employee of the Patterson Steel Company, fabricators and erectors of structural steel, of Tulsa, Okla., and respondent was erection foreman for said company and received an accidental personal injury while engaged in this hazardous occupation and arising out of and in the course of his employment. The accident was reported by the petitioner, Patterson Steel Company, to the State Industrial Commission on September 27, 1928, and in its report it states that Clarence E. Bailey, one of its employees, was injured while employed by the Patterson Steel Company and that at the time he was injured he was erection foreman, and that he had been in the employment of the petitioner, the Patterson Steel Company, since August 5, 1922, and that his average earnings were $6.30 per day, payable semi-monthly, and described the injury as "strained back while handling steel," extent of injury "undetermined," and that it furnished medical attendance immediately; Dr. A. Ray Wiley being the name of the physician. On May 24, 1929, the State Industrial Commission, having heard the testimony offered by claim-

ant, the respondent, found that the testimony is insufficient to show that any disability resulted from the injury sustained on September 20, 1928, and ordered that the claim of Clarence E. Bailey for compensation for injury sustained September 20, 1928, be denied, and that said cause be dismissed. On January 25, 1930, the respondent, Clarence E. Bailey, filed his motion to review the order of the State Industrial Commission dated May 24, 1929, and for grounds of his motion alleges substantial change of condition as in said motion more fully set forth. The motion is lengthy and we do not deem it necessary to set the same out here in full. Upon this motion being filed testimony was taken at Tulsa on the 4th day of April, 1930. The following questions were propounded to claimant and the following answers given:

"Q. Now, what is your condition at this time with reference to your condition on April 16, 1929, with reference to being better or worse? A. It is worse. Q. Will you explain to the court in what way? A. Well, it gets hurting me more than it did, I walk, when I get up, I walk like that; I get better, then I can't handle my papers; I carry a route, my paper bundled up, 150 in a bundle, I carry my papers, carry them into the house, I can't hardly straighten up when I get the bundles in. Q. Was you that bad in 1929? A. No, sir. Q. Now, what is your condition at this time with reference to the condition on the 24th day of May, 1929, in regard to being better or worse? A. It is worse. Q. Is it worse in the same way you recited in answer to the last question? A. Yes, sir."

The respondent was not cross-examined. Dr. W. W. Dickerson was interrogated and gave answers as follows:

"Q. Now, in this injury 1928, Dr. Dickerson, I will ask you, what that injury consisted of, as shown by your examination? A. If I recall, there was a slipping of the pelvis bone, where it attaches to the sacrum; there was a condition of the lumbar region —either a dislocation or fracture—I can't tell from a local examination, and at that time I advised, in fact, I treated him for that pelvis bone, and advised an X-ray picture for the trouble probably in the lumbar region. Q. Were the pictures taken? A. Yes, sir. Q. Did you have occasion to examine the pictures? A. I don't recall whether I saw them or not—it was referred back to the insurance doctor. Q. I don't—— A. I know I talked to the man who took the pictures, I can't tell whether I saw them or not. Q. Have you also had occasion to see and treat Mr. Bailey since May 24, 1929? A. Yes, sir; every little while he comes up to see me. Q. Basing your answers on experience and treating—matters of this nature —would you say his condition is better or

worse than it was on May 24, 1929? A. It is worse, for the reason a condition like that can't be adjusted, the tendency is to get worse, possibly that condition gets worse,—there is also chance of arthritis, coming up,—Q. Now basing your answer on your experience in treating this particular man from 1925, up until the present time, what would you say his condition is at this time, the result of the injury sustained September 20, 1928? A. Yes, sir. Q. You are sure of that? A. Yes, sir."

There is much other testimony in the record showing a change in condition, but we set out the portions above quoted to show that there was ample testimony to establish that the respondent Bailey had a change in conditions growing out of the original injury. This court has repeatedly held that where there is any competent evidence reasonably tending to support an award of the Industrial Commission, the same was conclusive upon this court.

Petitioner seeks to reverse the award in this case and contends that the decision of the State Industrial Commission is contrary to the decisions of this court in the following cases: Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 Pac. 570; State ex rel. v. Green, 147 Okla. 119, 294 Pac. 787; Olentine et al. v. Calloway, 147 Okla. 137, 295 Pac. 608; Oklahoma Railway Co. v. State Industrial Commission, 147 Okla. 129, 295 Pac. 216.

We fail to see wherein these decisions sustain the contention of petitioner. In Ward v. Beatrice Creamery Co., supra, this court said:

"At the close of the hearing, the Commission denied the right of the plaintiff in error (petitioner) to any award upon the ground that he had not shown by his testimony that he had any right to recover against the defendant in error (respondent), upon the ground that it was an occupational disease from which petitioner was suffering, and not a compensable injury within the purview of the Workmen's Compensation Law, and the cause comes to this court upon the record for a review of the decision of the State Industrial Commission."

In the Green Case, the Commission entered its order denying compensation to claimant for the reason that "the disability complained of was not due to an accidental injury arising out of and in the course of his employment with the Highway Department on December 3rd or 4th, 1926." In the case of the Oklahoma Railway Co. v. State Industrial Commission, supra, the Commission made its order on July 6, 1929, whereby McAbee's claim for compensation against the Oklahoma Railway Company was dismissed by the Commission for the reason that "claimant had failed to show by competent testimony that any accidental injury was sustained, or that any disability resulted therefrom." In the Olentine Case, the opinion of November 18, 1930, cited by petitioners, was on January 6, 1931, recalled, and a rehearing granted, and the cause resubmitted. On January 27, 1931, another opinion was filed in that case, which became final February 7, 1931. In the last opinion the 4th paragraph of the syllabus is as follows:

"The word 'award,' as used in section 7296, C. O. S. 1921, authorizing the State Industrial Commission, upon its own motion or upon the application of any party in interest, on the ground of a change in condition, to at any time review any award, and, on such review to make an award ending, diminishing, or increasing the compensation previously awarded, means the decision, determination, or judgment for money, hospitalization, crutches, or other compensation in favor of an employee, provided for in the Workmen's Compensation Act."

In the case at bar it is undisputed that Clarence E. Bailey received an accidental personal injury while engaged in an hazardous occupation and arising out of and in the course of such employment, and there is competent evidence in the record to show that there has been a change in his condition since the hearing on May 24, 1929. There is also competent testimony that the petitioner, Patterson Steel Company, voluntarily furnished him medical attendance for such injury. Section 7288, C. O. S. 1921, provides that:

"The employer shall promptly provide for injured employees such medical, surgical, or other attendance or treatment, nurses and hospital service, medicine, crutches and apparatus as may be necessary, during 60 days after the injury or for such time in excess thereof as in the judgment of the Commission may be required. If the employer fails to provide the same, the injured employee may do so at the expense of the employer."

In the case of United States Fidelity & Guaranty Co. v. State Industrial Commission, 115 Okla. 273, 244 Pac. 432, the Commission found that the claimant was injured while in the employ of the respondent and in the course of his employment, but further found that he had "lost no time" by reason of the injury, and made an award requiring respondent or insurance carrier to pay all medical expenses. In that case the court held that the Industrial Commission had continuing jurisdiction by reason of a change in condition and upon the ground that the Commission had made an award of medical attendance. The syllabus is as follows:

"Section 7296, C. O. S. 1921, contained in the Workmen's Compensation Act, providing that the Industrial Commission may review an award at any time, 'on the ground of a change in conditions,' should be liberally construed in the interest of the employee, and authorizes the Commission to take into consideration all of the conditions pathological, physical, and industrial which may in any way have a direct bearing on the rights of the injured employee."

Also:

'Where the Industrial Commission finds that the claimant was injured, while in the employ of the petitioners, and in the course of his employment, but refuses to make any award because the claimant has lost no time, and is still receiving the same wages from his employer that he received prior to receiving the injury complained of, and thereafter the claimant is discharged, and the injury sustained is shown to still exist, which incapacitates the claimant, the Commission may take into consideration the fact that the claimant has been discharged in determining whether or not an award should be made on a review of the former hearing."

So, in this case, the petitioner having voluntarily furnished medical attention to the respondent Bailey, I am of the opinion that this brings the case under the rule announced in the case of United States Fidelity & Guaranty Co. v. State Industrial Commission, and the case of Olentine v. Calloway, supra. I see no material difference between the facts in United States Fidelity & Guaranty Co. v. State Industrial Commission, supra, and the case at bar. In the former case the Commission ordered the employer to pay the medical expenses, and in the latter the employer voluntarily paid the same, but in each case, under section 7288, C. O. S. 1921, it was the duty of the employer to promptly provide medical, surgical, or other attendance to an employee injured in the course of and arising out of his employment. Of course, this rule only applies in cases where, under the law, the employer is required to furnish the medical attention. Also, in the latter case the Commission found that the injured employee ."lost no time." In the case at bar the employee returned to work as gang pusher before the expiration of the waiting period, but was later discharged that his injury might be treated.

In the case of Marland Production Co. v. Hogan, 146 Okla. 220, 294 Pac. 115, this court held that:

"When sections 7296, 7297, and 7325, C. O. S. 1921, are considered together, it must be held that it was the legislative intent that the Commission have a continuing power and jurisdiction to review its award on the ground of a change in conditions only, and, except for a change in conditions, the award is final and conclusive upon all questions within its jurisdiction, unless suit is commenced in this court within 30 days to review the award or decision."

In the body of the opinion the court uses this language:

"By reference to the case of United States Fidelity & Guaranty Co. v. State Industrial Commission, 115 Okla. 273, 244 Pac. 432, it will be seen that the Commission found that the claimant was injured while in the employ of the petitioners, and in the course of his employment, but refused to make any award because the claimant had lost no time, and was still receiving the same wages from his employer that he received prior to receiving the injury complained of, and thereafter the claimant was discharged, and the injury sustained was shown to still exist which incapacitated the claimant."

The Commission did not find that the respondent Bailey did not receive an accidental injury growing out of and in the course of his employment, but simply held that no injury resulted from the accident. Evidently the Commission meant by such finding that no compensable injury authorizing an award in money was shown at the time of the hearing because the employee returned to work before the expiration of the five-day waiting period and the employer had voluntarily paid for medical attendance. In the light of the evidence found in the record, no other conclusion would be justified. The findings of the Commission should have been more complete, but we have liberally construed the Workman's Compensation Law, and giving it a liberal construction, we could not arrive at any other conclusion relative to the intention of the Industrial Commission at the time it entered its original findings.

For the reasons herein stated, I am of the opinion that the State Industrial Commission had power and jurisdiction on the ground of change in conditions to review its former award, and that there is competent evidence upon which its findings were based. This court has many times held that it will not disturb such findings where there is any competent evidence in the record reasonably tending to support the same. Aetna Life Insurance Co. v. State Industrial Commission, 109 Okla. 65, 234 Pac. 765; Courson v. Consolidated Fuel Co., 121 Okla. 170, 249 Pac. 155; Allen v. Elk City Cotton Oil Co., 125 Okla. 142, 256 Pac. 898; Oklahoma-Arkansas Telephone Co. v. Fries, 128 Okla. 295, 262 Pac. 1062.

For the reasons herein stated, I concur in

the conclusion reached in the opinion delivered by Mr. Justice Kornegay.

RILEY, J. (dissenting). I cannot agree with the opinion of the majority wherein the term "award," as used in our Workmen's Compensation Act, is defined. The majority opinion states:

"It is further clear that the term 'award' is used by the Legislature as meaning a decision or finding of the Commission, and that the question as to whether or not the claimant was successful in getting the award in his favor, or the insurance carrier or the employer getting the award in their favor, is by no means decisive."

It is not clear to me that the term "award" is susceptible of such a definition, for this court no longer ago than January 27, 1931, in the Olentine Case, defined "'award' as used in section 7296, C. O. S. 1921," to mean "the decision, determination, or judgment for money, hospitalization, crutches or other compensation in favor of an employee, provided for in the Workmen's Compensation Act." Olentine v. Calloway, 147 Okla. 137, 295 Pac. 608; State ex rel. v. Green, 147 Okla. 119, 294 Pac. 787; Okla. Ry. Co. v. St. Indus. Comm., 147 Okla. 129, 295 Pac. 216.

In all of these recent cases the rule is squarely stated that where the State Industrial Commission dismisses claim for compensation or holds by its judgment that claimant has failed to establish an accidental injury arising out of or in the course of his employment, or that no disability has resulted therefrom, and such decision becomes final in the failure of claimant to secure review within 30 days as provided by section 7297, C. O. S. 1921, amended ch. 61, S. L. 1923, that then the Commission is without jurisdiction to review the decision on the ground of change in condition.

Section 7296, C. O. S. 1921, permits a review of an award on the ground of change in condition and authorizes the "ending, diminishing or increasing" of **"the compensation previously awarded."**

Therefore, it seems to me that a condition precedent to subsequent action by the Commission on the ground of change in condition is "compensation previously awarded." Compensation previously awarded is based upon an accidental injury arising out of and in the course of employment. Unless there is compensation previously awarded, there is nothing to end, diminish, or increase as by the statute contemplated to be the subject-matter of the subsequent hearing, and upon which the changed condition, when proven, is to operate.

I would not be harsh in the requirement for "compensation previously awarded," but would hold medical cost sufficient—indeed, it may be under a liberal interpretation that compensation paid either in salary or medical expense in order to obviate an award therefor would suffice, under the view that a judgment and award is useless where payment is voluntarily made.

But turning to the facts in the case at bar, we find that on May 24, 1929, this cause was first heard by the Commission. The Commission found that:

"The claimant **alleged** a disability resulting from an injury sustained on September 20, 1928."

But, it was recited, the testimony showed that claimant had sustained similar injuries prior to September 20, 1928. That the evidence was insufficient to show disability resulting from the injury of September 20, 1928. Compensation was denied and the cause dismissed.

No review was made within 30 days as by statute authorized, but on January 5, 1930, the claimant filed a motion to reopen on the ground of "change of condition." The movant further states that he has better testimony now than then. Some witnesses were afraid to testify then—"didn't want to get in bad with the Patterson Steel Company," as disclosed by the majority opinion, but now bold and unafraid witnesses are obtainable who will tell the truth.

It is my view that awards, like solemn judgments, are to be considered as a verity, when final; that there will be no end to litigation or decisions when it is seen that one may abortively present his case, brush the failure aside, and try again.

In the last order, June 2, 1930, the Commission finds it necessary to find that on September 20, 1928, more than two years prior, claimant sustained an accidental injury resulting in a severe injury, that matter was considered by the Commission on May 24, 1929, and compensation was denied and the cause dismissed. The last order of the Commission retroactively allows compensation to date back to May 24, 1929, the very day on which compensation was denied.

My view is that the majority opinion permits relitigation of matter already determined. I would hold that in order for claimant to reopen the cause he must, under these circumstances, not only show a change in condition, but he must also establish "compensation previously awarded" or voluntarily paid in lieu of an award. Vietti

v. Crowe Coal Co., 133 Okla. 81, 271 Pac. 160; Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 Pac. 570.

The last order made does not purport to be based upon a change in condition, but it is an award made upon a hearing of the original issues between the parties, just as if no prior decision had been entered. It is my view that "a judgment is the end of the law," that "it finally determines the disputes and adjusts the adverse interests of mankind." Freeman on Judgments, par. 1. It is my view that "continuing jurisdiction as contemplated by the Workmen's Compensation Act, section 7325, C. O. S. 1921, as amended by S. L. 1923, ch. 61, p. 118, applies **only** to cases of which the Commission has jurisdiction, and not to cases that have by it been dismissed as noncompensable and allowed to become final.

In other words, as an exception to the rule quoted from Freeman on Judgments, i. e., "A judgment is the end of the law," where an award is made in favor of claimant, due to "the fact that the nature and probable effect of an injury in many cases cannot immediately be determined by the most proficient physicians or surgeons" (Choctaw-Portland Cement Co. v. Lamb, 79 Okla. 109, 189 Pac. 750), the Legislature, in its wisdom, provided for continuing jurisdiction so that the initial award would not be the end of the law, but the award would be immediately made to allow the workman to live and finality would be postponed so as to permit the full extent of disability resulting from the accident (and compensation therefor) to be embraced within the scope of the original award by a subsequent and supplemental award—allowable only on the ground of change in condition, and when that ground is established subjecting "the compensation previously awarded" to be ended, diminished, or increased (sec. 7296, supra).

In the case at bar, by straining at and with the words used in the original order, we might say under a most liberal view that the Commission found an accident arising out of and in the course of employment, "that the testimony is insufficient to show that any disability resulted from the **injury sustained on September 20th**," but we most certainly must find that the Commission held that no disability resulted therefrom—that compensation was denied—that the cause was dismissed.

Consequently, it is my view that the Commission was without jurisdiction, two years subsequent to the accident, to review its previous order, adverse to claimant, wherein it had dismissed the claim and ended the cause by its judgment which, right or wrong, was permitted to become final.